# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD EUGENE MOATS, | : | CIVIL NO.: 1:20-CV-01554 |
| | : | |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI,[1] | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

**I. Introduction.**

    This is a social security action brought under 42 U.S.C. §§ 405(g). Donald Eugene Moats ("Moats") seeks judicial review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits and supplemental security income benefits. Because the Commissioner's decision is supported by substantial evidence, the court will affirm the Commissioner's decision.

---

[1] Kilolo Kijakazi is now the Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 16-1* to *16-11*. On July 25, 2017, Moats protectively filed[2] a Title II application for a period of disability and disability insurance benefits in addition to a Title XVI application for supplemental security income for an alleged disability beginning May 24, 2017. *Admin Tr.* at 15.  His claim was denied on November 20, 2017. *Id.* On January 25, 2018, Moats filed a written request for a hearing, which was held on May 30, 2019. *Id.*  Moats appeared and testified at the hearing with the assistance of counsel. *Id.*

On July 3, 2019, Administrative Law Judge Howard Kauffman ("ALJ") determined that Moats had not been disabled within the meaning of the Social Security Act from May 24, 2017, through the date of the decision. *Id.* at 27.  And so, he denied Moats benefits. *Id.*  Moats appealed the ALJ's decision to the Appeals Council, which denied his request for review on June 24, 2020. *Doc. 16-2* at 1, 5.  This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

---

[2] Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-cv-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017).  "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

On August 28, 2020, Moats began this action by filing a complaint against the Commissioner. *Doc. 1*. He requests that the court find that he is entitled to Social Security benefits or remand the case for a further hearing. *Id.* at ¶¶ 1-2. The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. *Docs. 15-16*. The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned. *Doc. 17*. The parties then filed briefs, *see docs. 21, 26, 27*, and this matter is ripe for decision.

## III. Legal Standards.

### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

3

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Moats is disabled, but whether substantial evidence supports the Commissioner's finding that he is not disabled and whether the Commissioner correctly applied the relevant law.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.**

To receive benefits under Title XVI of the Social Security Act, a claimant generally must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 416.920.  Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019).  The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).  In making this assessment, the ALJ considers all the

claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

**IV. The ALJ's Decision Denying Moats's Claim.**

On July 3, 2019, the ALJ denied Moats's claim for benefits. *Admin. Tr.* at 27. At step one of the sequential-evaluation process, the ALJ found that Moats had not engaged in substantial gainful activity since May 24, 2017, the alleged onset date. *Id*. at 18. At step two of the sequential-evaluation process, the ALJ found that Moats had the following severe impairments: "late effects of vascular insult to the brain (stroke/cerebrovascular accident – CVA) including secondary central pain syndrome." *Id*.

At step three of the sequential-evaluation process, the ALJ found that Moats did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 20. Specifically, the ALJ discussed Listing 11.04 in connection with Moats's vascular insult to the brain. *Id*. The ALJ determined that Moats did not meet the listing. *Id.* at 20-21. The ALJ then determined that Moats has the RFC to perform light work[3] with some limitations. *Id.* at 21. The ALJ held that Moats can:

---

[3] *See* 20 C.F.R. § 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional

7

> [L]ift and carry ten pounds frequently and twenty pounds occasionally; sit, stand or walk for six hours each per eight-hour workday; frequently climb ramps or stairs but only occasionally climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch but never crawl; no overhead reaching with the dominant right hand; and no exposure to dust, fumes, gases, odors, poor ventilation, work at unprotected heights, or work around moving machinery parts.

*Id*.

In making this RFC assessment, the ALJ reviewed Moats's assertions, his activities of daily living, his treatment records, objective medical evidence, and the opinion evidence in the record. *Id*. at 21-26. At step four of the sequential-evaluation process, the ALJ found that Moats was incapable of performing past relevant work as a welder. *Id*. at 26. At step five of the sequential-evaluation process, considering Moats's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that there were jobs—such as ticket taker and agricultural produce sorter—that exist in significant numbers in the national economy that Moats could perform. *Id*. at 26-27. In sum, the ALJ concluded that Moats was not disabled from May 24, 2017, through the date of his decision on July 3, 2019. *Id*. at 27. Thus, the ALJ denied Moats benefits. *Id*.

---

limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

## V. Discussion.

Moats claims that the ALJ's RFC findings are not supported by substantial evidence because the ALJ improperly weighed the opinion evidence, particularly the opinion of treating physician, William Bossert, M.D. ("Dr. Bossert"). Moats also asserts that the ALJ substituted his own lay interpretation of the medical evidence. Additionally, Moats contends that the ALJ erred in finding that there are a significant number of jobs in the national economy that Moats can perform.[4] We conclude that the ALJ did not err in weighing the opinion evidence, he did not substitute his own lay interpretation of the medical evidence, and that he did not err in finding that there a significant number of jobs in the national economy that Moats can perform.

Because Moats's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence. The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Moats's, filed on or after March 27, 2017, on the other hand. Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner

---

[4] We note that Moats's brief is not a model of clarity. Throughout his brief, Moats references an unrelated doctor, misgenders the ALJ, and fails to use subheadings for his arguments appropriately. Indeed, his brief is disorganized and difficult to follow. Accordingly, we will address his arguments as best as we can understand them.

considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the old regulations, where the Commissioner does not give a treating source's medical

opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R.

11

§§ 404.1520c(b)(2), 416.920c(b)(2). As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

  The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*. But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

**A. The ALJ's evaluation of Dr. Bossert's opinion is based on substantial evidence.**

Moats contends that the ALJ's RFC findings are not based on substantial evidence because the ALJ improperly evaluated the opinion evidence of Dr. Bossert. By way of background, Dr. Bossert examined Moats on July 17, 2018. *Admin. Tr.* at 556. Dr. Bossert provided his medical opinion on a check-box form that included room for small handwritten notes. *Id.* at 553-56. Dr. Bossert indicated on the check-box form that Moats had the following symptoms: balance problems; poor coordination; falling spells; numbness, tingling, or other sensory disturbance. *Id.* at 553. Dr. Bossert found that Moats could sit and stand/walk for less than two hours each over the course of an eight-hour workday. *Id.* at 554. Dr. Bossert also found that Moats could sit for only ten minutes at a time and stand or walk for only five minutes at a time. *Id.* Dr. Bossert checked a box that indicated Moats's symptoms were "frequently" severe enough to interfere with attention and concentration needed to perform even simple work tasks. *Id.* Additionally, Dr. Bossert indicated numerous times in writing that Moats was unable to work. *Id.* at 553-56.

The ALJ found Dr. Bossert's opinion to be unpersuasive. *Id.* at 25. The ALJ noted that he found Dr. Bossert's opinion inconsistent with Dr. Bossert's own medical records, which documented only conservative medical management for the residual deficits associated with CVA, modest objective physical deficits on

13

examination, and minimal mental deficits. *Id.* Additionally, the ALJ noted that Dr. Bossert's opinion was not consistent with other objective medical evidence of record that showed substantial improvements in physical capacity on a longitudinal basis, modest physical residual deficits, and no significant mental deficits. *Id.*

Moats argues that the ALJ's RFC finding that he was capable of light work is not supported by substantial evidence because the ALJ failed to properly consider Dr. Bossert's opinion. *Doc. 21* at 2, 5. Moats argues that the evidence "supports a picture that fails to match the depiction described in the ALJ's decision." *Id.* at 7. Moats argues that Dr. Bossert's opinion is internally consistent because, in Dr. Bossert's July 17, 2018 opinion and his July 13, 2018 notes, he indicated balance issues, issues with dropping things, and considered Moats a falling risk. *Id.* at 9. Moats also contends that physical therapy reports support Dr. Bossert's opinion regarding Moats's ability to stand and walk. *Id.* at 9.

The Third Circuit has recognized that an ALJ is not expected "to make reference to every relevant treatment note in a case"; however, the ALJ is expected "to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). Additionally, the Third Circuit has noted that "[w]here there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and

will vacate or remand a case where such an explanation is not provided." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) (citing *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

The ALJ's reasoning for finding Dr. Bossert's medical opinion unpersuasive is as follows:

> This opinion is not well supported by Dr. Bossert's own medical records, which document only conservative medical management for the residual deficits associated with CVA, stable and fairly modest objective physical deficits on examination, and minimal mental deficits on examination (Ex. 13F).  Similarly, this opinion is not consistent with the other objective medical evidence of record, which, as detailed above, documents substantial improvement in physical capacity on a longitudinal basis, only modest physical deficits per objective examination, and no significant mental deficits per examination.  Accordingly, because it is neither supporter nor consistent, this opinion is not persuasive.

*Admin. Tr.* at 25.

The ALJ's opinion described inconsistencies in both Dr. Bossert's own records and in the medical evidence of others. *Id*. The ALJ noted that Dr. Bossert's medical opinion is inconsistent with his own medical examination records, "which document only conservative medical management for the residual deficits associated with CVA, stable and fairly modest objective physical deficits on examination, and minimal mental deficits on examination." *Id*. The ALJ then cited to Exhibit 13 (*Admin. Tr.* 599-623) which encompasses everything of record by Dr. Bossert. *Id*. The ALJ also noted that Dr. Bossert's medical opinion was

15

"not consistent with the other objective medical evidence of record, which, as detailed above, documents substantial improvement in physical capacity on a longitudinal basis, only modest physical residual deficits per objective examination, and no significant mental deficits per examination." *Id.*

The ALJ noted that he considered Dr. Bossert's opinion in conjunction with the previously cited record evidence. *Id.* By saying, "as detailed above," the ALJ demonstrated that he connected Dr. Bossert's inconsistencies to the record evidence of Dr. Kneifati, Dr. Arnold, and other medical evidence. *Id.* Dr. Bossert, whose medical opinion occurred one year after Moat's stroke, indicated that Moats had significant limitations with reaching, handling, or fingering. *Id.* In contrast, Dr. Kneifati observed that Moats could frequently reach, handle, and finger five months after the stroke occurred. *Id.* at 24, 540, 544. Additionally, Dr. Arnold found that Moats had no reaching or handling limitation. *Id.* at 25, 70. Dr. Bossert also opined that Moats's attention and concentration would frequently be impaired, however Moats noted in his own function report that he didn't have concentration problems. *Id.* at 22-23, 25, 243, 554. Additionally, Dr. Bossert opined that Moats could stand or walk for five minutes at a time, but Moats reported in his May 2019 hearing that he walked three miles per day. *Id.* at 22, 25, 44, 554.

An ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F.3d 422,

429 (3d Cir. 1999).  Here, we find that the ALJ sufficiently identified inconsistencies between Dr. Bossert's medical opinion and other objective medical evidence by referring to his own previously cited record evidence.  Accordingly, we find that the ALJ's determination that Dr. Bossert's opinion was inconsistent with other objective medical records was based on substantial evidence.

To the extent that Moats asks this Court to re-weigh the record evidence or make new factual findings, this Court may not invade the ALJ's province as finder of fact in disability proceedings, for "our inquiry is not whether an alternate conclusion could have been reached but whether substantial evidence supported the ALJ's decision." *See Daub v. Colvin*, No. 3:15—CV—1066, 2015 WL 8013037, at *9 (M.D. Pa. Dec. 7, 2015).  It is the right and responsibility of the ALJ to make assessments on weight given to medical opinions, and we find that substantial evidence supported the ALJ's decision.  "We will not set the Commissioner's decision aside if it is supported by substantial evidence, even if we would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360.  Moats simply asks this Court to reweigh the evidence, which we cannot do.  Accordingly, we find that the ALJ did not err in his evaluation of Dr. Bossert's opinion.

### B. The ALJ did not substitute his own lay interpretation of the evidence.

Moats contends that the ALJ substituted his own lay interpretation of the evidence to support his RFC assessment. Moats claims that the ALJ attempted to "play doctor" because he characterized certain findings as modest and minimal, but he did not provide support for these characterizations. *Doc. 21* at 10. Additionally, Moats claims that the ALJ had no evidence to his assertion that the plaintiff experienced "substantial improvement in physical capacity." *Id*. at 10-11.

The ALJ did not substitute his own lay interpretation of the evidence. Instead, when discussing Dr. Bossert's opinion, he specifically references the record evidence with the phrase "as detailed above" as the basis for his characterizations and findings. *Admin. Tr.* at 25. The ALJ's overt references to the record evidence demonstrate that he did not substitute his lay interpretation of the evidence but instead relied on the record evidence in making his determinations. And because we have already concluded that the ALJ's evaluation of Dr. Bossert's opinion is based on substantial evidence, any potentially erroneous characterization or language used by the ALJ in forming his determination is a harmless error. *See Weidman v. Colvin*, 164 F.Supp.3d 650, 658-59 (M.D. Pa. 2015) ("Therefore, looking at the totality of the evidence, substantial evidence supports the adverse credibility finding despite the ALJ's mischaracterization error, which this court

concludes is harmless."). Accordingly, we find that the ALJ did not substitute his own lay interpretation of the evidence.

### C. The ALJ did not err in finding that there are a significant number of jobs in the national economy that Moats can perform.

Moats argues that the vocational expert and the ALJ's RFC conflicted because the jobs identified by the vocational expert required frequent reaching and handling, but the ALJ's RFC found that Moats was limited to only occasional finger and grasping with his right arm. *Doc. 21* at 11-12. The ALJ stated that "[t]he vocational expert's testimony is consistent with the DOT except that the DOT does not differentiate between overhead reaching and reaching generally or discuss restrictions affecting only one upper extremity." *Admin. Tr.* at 27.

Indeed, as the Commissioner correctly points out, the fact that "a job requires reaching, handling, or fingering does not necessarily mean that Plaintiff is incapable of performing that job since … he may be able to satisfy the requirements of the job by reaching, handling, or fingering with his left hand with occasional assistance from his right hand." *Diehl v. Barnhart*, 357 F.Supp.2d 804, 822-823 (E.D. Pa. 2005); *see also Brown v. Colvin,* No. 15-cv-323, 2016 WL 6821877, at *3 (E.D. Pa. Nov. 17, 2016) ("[E]ven though the DOT states the three jobs identified by the VE . . . require constant or frequent reaching, it is not clear a conflict between the [vocational expert] testimony and the DOT exists, as Brown

may be able to perform those jobs by reaching with his left hand with occasional assistance from his right hand."); *see also Goss v. Berryhill*, No. 16-cv-68, 2017 WL 714523, at *3 (W.D. Pa. Feb. 23, 2017) (affirming the ALJ's decision and declining to find a conflict between the DOT and the vocational expert's testimony under similar circumstances). Accordingly, we find that the ALJ did not err in relying upon the vocational expert's testimony, and the ALJ did not err in finding that there are a significant number of jobs in the national economy that Moats can perform.

## VI. Conclusion.

For the foregoing reasons, we will affirm the decision of the Commissioner, and final judgment will be entered in favor of the Commissioner and against Moats. An appropriate order follows.

<u>*S/Susan E. Schwab*</u>
Susan E. Schwab
United States Magistrate Judge